The final case this morning is number 19-1690, K.G. v. Health and Human Services. Mr. Hermsen. Thank you, Your Honor. May it please the Court, Counsel. In psychology, there's a theory called Maslow's Hierarchy of Needs. What this says, at its most basic, is that a human being must address their basic survival needs before they're even psychologically capable of addressing less immediate needs, such as, for example, the statute of limitations in the National Vaccine Injury Compensation Program. What we have in this case is a petitioner who, for years, struggled just to survive. She struggled physically. She lost her ability to walk, to talk. Okay, but let's assume that the Vaccine Act does allow for equitable tolling because of disability. And I don't think that there's any issue here that, if the Vaccine Act does so provide, that her condition was such that she was incapable of acting. And that seems to make the issue boil down to whether the appointment of a representative, a conservator or a guardian, stopped the tolling of the statute of limitations that would otherwise exist because of incapacity. So why don't you address that issue? I agree, Your Honor. I think that the case really turns on that issue. I think, first of all, the test we need to look at is Barrett. And I don't know if my brief did a good enough job here. Maybe you should just speak up a little bit. Yes, yes. The test we need to look at is Barrett. That's the 2011 Federal Circuit test. And what Barrett says is there are two parts. First of all is the mental incapacity of sufficient severity. But second of all, and in that case they were talking about a petitioner represented by an attorney, they said if a petitioner is represented by an attorney, the test is did the mental incapacity, quote, impair that relationship. So that's the test we're applying here. Somehow in this case we got away from that test. But that's the test we need to apply. You're saying that test ought to be applied to the guardian relationship? Correct. I think if we're going to apply that test to someone represented by an attorney, in this case we have a caring sister, not legally trained, not an attorney, who's simply trying to step in two and a half years after the fact, after the vaccination, after the injuries, and help her sister out, I think arguably we could apply a lower test. But I think assuming for purposes of this appeal, I think we can assume that that Barrett test would apply to a non-attorney the same way it applies to an attorney. So I think the test is was that relationship impaired. I think the answer is absolutely. And I can get into that, but to continue to address your question, Your Honor, Barrett was a case decided in the context of a veteran's benefit claim. That test should absolutely apply in the Vaccine Injury Compensation Program as well. They're both remedial statutes. And if you look at Supreme Court precedent, I was not able to find a case where we're dealing with a remedial statute with what the Supreme Court has coined a run-of-the-mill statute limitations, where they did not apply equitable tolling, where they found that the Irwin presumption was overcome. In every case where you're dealing with a remedial statute with this standard run-of-the-mill statute limitations, as they describe it, they apply equitable tolling. There have been cases where they have not applied equitable tolling. For example, there was an IRS case. They were tax refund appeals. And they said, in that case, we're not dealing with a remedial statute. This is an administrative statute. And the massive burden on the IRS by millions of cases that would potentially be affected by equitable tolling tells us that as we interpret this statute, we're not going to interpret equitable tolling into it. Okay, but let's assume that we are going to interpret the statute along with Clover to provide for equitable tolling. And why is it that the relationship between the sister and the claimant prevented the sister as guardian from retaining an attorney and pursuing the claim? What was needed by the sister that wasn't available to her because of the incapacity? So, first of all, Your Honor, I think this case would be different if her sister was there from the very beginning. If her sister was her guardian and conservator at the time she got the shot, maybe the case is different. She wasn't. She wasn't appointed guardian and conservator until two and a half years after the vaccination and after the symptoms. So, I think that's one factor. The second factor is the... Why does that make a difference? What's the evidence that the claimant would provide during that two and a half year period that was necessary to make the claim? I think part of the reason why her being there contemporaneously and being involved contemporaneously is important is because we have such a difficult chain of causation in this case. And we're the first to admit that. This isn't an obvious chain of causation. If she had gotten a shot in her arm, in her shoulder, and within a day, she's feeling pain in that shoulder and that lasts for another six months, we might say, Hey, legal representative, that's a pretty obvious claim that you should have brought. That's not this case. She had a shot, a seasonal influenza vaccination. And for attorneys that are familiar with this program, one of the main types of injuries you see from that in this program are this Guillain-Barré syndrome and then the related chronic idiopathic demyelinating polyneuropathy, CIDP. So you're saying that the sister needed the claimant's testimony as to the symptom development of the systems and the chronology and the timing? Correct. Would you say also that that distinguishes? There's lots of different Vaccine Act cases that involved parents representing children. And that could distinguish that situation. For example, here, the sister wasn't called in to two and a half years later, whereas in the typical situation involving a parent who's representing a child, they're there throughout the whole thing, taking them to the doctor from the beginning to the end. Absolutely, Your Honor. Yeah, I agree with that 100%. Yes. So she's not there from the beginning. This is not an obvious claim by any means. And then we're talking about a mental incapacity of such severity that she's actually sent as an inpatient to a mental health facility for three-plus years. So that's another fact that if we change that a little bit, maybe this case is different. Maybe she's incapacitated but not to the point where she can't pass on the necessary information to her guardian. So we're talking about a severe mental incapacity in this case, guardian-conserver that was not there from the very beginning, a claim that is not very obvious. So all these factors, that's the information, Your Honor, that her sister really needed to be able to reasonably be expected to bring this claim. The other factor I would touch on is the extent to which that relationship fell apart. We have affidavits in the case from her sister saying, KG hated me. She would not cooperate with me for anything. She believed I was conspiring against her. She believed I was trying to turn her kids against her. She believed I was locking her up in this facility as if it was a prison. But it's not just after the fact affidavits. It's contemporaneous medical records. We have psychiatry records where KG is complaining to her psychiatrist in every single appointment. And that's not my language. That's the psychiatrist's language. It said every single conversation I have with KG, she brings up her sister. She says her sister is my main problem, which the context of her saying my sister is my main problem is her being locked in a nursing home without the use of her legs, her arms. She can barely speak. She's lost her job. She barely talks to her kids. But yet in the context of all that, she says my sister is my main problem. Can I interrupt you for a minute? I hear what you're saying, and I know you've made this argument in your brief, but under Holland, which is a Supreme Court case on equitable tolling, why wouldn't we vacate and remand? I mean, one of the things the Supreme Court said in Holland is emphasize the importance of the trier of fact being the first one to determine whether equitable tolling applies. And here, in this case, if we were to agree with you that the court below applied a bright-line rule and didn't apply Barrett or didn't apply equitable tolling, look at the totality of circumstances, why wouldn't we vacate and remand? Why would we be the first ones to decide whether equitable tolling applies? That may be the correct course, Your Honor, and I know that that was done in the Hodge. There was some dispute about how the equitable tolling doctrine applied on appeal in Hodge, and I believe it was remanded for a redetermination based on this court's clarification on how this doctrine should be applied. So that may be correct. I don't necessarily disagree with you on that because I do think if this court clarifies that equitable tolling can apply when a legal representative is appointed, I think that completely changes this case. Do you think it makes a difference whether it's a guardian or an attorney? You had mentioned earlier relying on the Barrett test, which talks about having counsel. Do you think there's a difference in the relationship there? I mean, practically, I do. I think we should be holding an attorney to a higher standard than we hold a non-legally trained sister. Because the attorney has the obligation to bring the suit if that's what he or she was hired to do, whereas it's not clear that the guardian has an obligation. Correct, Your Honor. And another factor I talked about in my brief is that I think what you're getting at with that point, Your Honor, is that guardians and conservators have very different considerations than an attorney does. I cited to an Iowa statute that says a guardian or conservator that brings, not necessarily that brings a claim, but that depletes an estate's assets or awards assets without good reason, they can actually be personally liable for that. So, obviously, I feel like we've got a pretty good case here. I don't think that's an issue here. But for a layperson evaluating a claim like this, they might say, there's no chance I'm bringing this claim, potentially having to spend $20,000, $30,000 on an expert, deplete this award's assets, and then have to be personally liable for that. So there's very different considerations at play for the two. So, Your Honor, I have a few minutes left. I'd like to reserve a little bit of time for rebuttal. So unless you have anything else you want me to address at this time. Okay. Thank you. Thank you. Your Honor. Good morning, Your Honor. May it please the Court. I'll start kind of where we just left off on the discussion of the effect of the legal representative and what that has on the equitable tolling test. I believe you asked how it factored in and what counsel said was that the sister was not there at the beginning and she didn't have all of the information that was available in order to understand that there was a claim. That sounds to me like the discovery rule, which this Court held in court, is not available. That basically the reason the claim was not filed by the guardian was because the guardian was not aware that there was a potential claim to be filed. So it wasn't that there was something standing in the way. No, I don't think it's the discovery rule. What they're saying is that the appointment of the guardian shouldn't stop the tolling because the guardian needs further information and the cooperation of the claimant and can't get it. So in those circumstances, they're suggesting that the appointment of a guardian shouldn't stop the tolling. It's not applying a discovery rule. Well, but they haven't pointed to anything other than the fact that the guardian was unaware of information necessary to know that there was a claim that was standing in the way. But they're saying the reason why the guardian didn't know is because she couldn't communicate with KG. And I believe you asked how that you tried to distinguish that from cases of parents who were there from the beginning and would have all of the information. But this Court actually faced another case called Carson in 2013, which was a post-court claim, in which the parents of a child who developed or who had speech delays, and they argued the discovery rule in that case, and this Court said that that wouldn't apply. But what if we don't agree with you that they're arguing the discovery rule? What other arguments do you have? Well, that there was nothing that, just as the now Chief Special Master found, that there was nothing extraordinary standing in the way of the sister filing, as you suggested, retaining an attorney to investigate whether there was a claim available, and also that the second prong of the test, and while counsel argued Barrett today, in his briefing he argued the PACE test of both extraordinary circumstances and reasonable diligence, the Special Master found that there was a lack of diligence in pursuing the claim, both on the part of petitioner and her sister in this case. And you take the position that that was not challenged on appeal, right? Correct. Well, in the reply brief there's a response to your position. What do you have to say in response to that? They argue in the reply brief that basically their entire brief argued the diligence issue. I reviewed the initial brief and I did not find any specific instance where they raised this specific finding by the Chief Special Master and said that it was incorrect. But we also argued that even if the issue was not waived, that there were certainly ample grounds for the Special Master to find that there was a lack of diligence. How can that be in the light of our Chico case, which applies a stop clock approach and says the only question is whether there was diligence during the period of tolerance? Correct. Well, I'm not sure that we've established that Chico is as applicable. I mean, that was not a case that was decided under the Vaccine Act. And we've argued in our brief that when the Special Master is applying the facts to the test for equitable tolling, that there is an abusive discretion standard that's applied to those findings. And here the Special Master certainly was reasonable in looking at the fact that... The Special Master here said that automatically when there's a guardian appointed, it stops the tolling, right? Well, but the Special Master also looked at the fact that there was a period of over a year from the vaccination until KG first began to experience mental incapacity that she could have pursued a claim and she did not. But Chico says that period's not relevant. Well, that is the first year of the statute of limitations, so it has to be relevant. Well, maybe so, but Chico says it's not. And then again, there was a year and a half after KG regained mental capacity during which no efforts were made based on the record in this case. Have you read Chico? I have not read Chico. I don't believe it was cited. Then you go back and read it because it's inconsistent with the argument you're making. I'm sorry, I don't believe... The appellant argued that the Chico standard was applicable in their briefing, and we certainly did not argue in our briefing. You don't have to ignore the case. And we've... And Your Honor, we've actually made the argument that equitable tolling should not be available at all based on mental incapacity under the Vaccine Act. And I do think that question does need to be first reached by the court before we can go on and decide whether the facts of this case establish it. We are very much aware of that. And if you want, you can argue why it shouldn't apply. I would like to address why it does not apply. And I believe, again, that this court's decision in Clore, where the court held that the petitioner in that case argued basically for equitable tolling as a substitute for the discovery rule. And this court, in an en banc opinion, said it's not appropriate to use equitable tolling as a substitute for a remedy that Congress has conveyed a refusal to withhold. And we submit that Congress could have, in the statute of limitations, implemented a provision very much like savings clauses and other statutes of limitation that do toll for mental incapacity the fact that Congress did not include that in the statute of limitations in the Vaccine Act conveys its refusal. And again, Clore uses the language, it's a strong indication of Congress's conveying its refusal to not adopt that rule. Why would the same thing be true in the veterans area? Because Clore applies specifically to the Vaccine Act's statute of limitations, which is what this case is being decided under. It is a different statute of limitations than the veterans benefits. If equitable tolling for lack of capacity is available in the veterans area, why is this area different? The statutes are different in the veterans. In what way are they different? Well, in Barrett, the court said that as justification for applying equitable tolling based on mental incapacity, it was the veterans service, it was the fact that often the injury is going to be related, or the mental incapacity is going to be related to the very injury for which the veteran is seeking compensation. And also, I think this is... Isn't that the same here? No, not necessarily. I don't know that the record establishes, and I think this would have to require... That's the allegation, the allegation. Is that the mental incapacity flows from the alleged injury, but I don't... Correct. I mean, at this point in the proceeding, we're supposed to look behind that and see whether that's correct or not? Well, this is an equitable remedy. Right, I understand. And so there has to be fact-finding. Well, it's not an equitable remedy. We're trying to figure out whether there's something in vaccine law that makes it so unique from other areas of law that this rule wouldn't apply. You wouldn't have equitable tolling for a mental disability, right? Right. And I think, as we've argued in our brief, what makes the Vaccine Act unique is that when the act was implemented, Congress and the Court of Federal Claims points this out in the legislative history, Congress knew that a significant number of claimants that would be coming to the program were going to be children who suffered devastating neurological injuries. And Congress, knowing that, could have implemented a statute of limitations that accounted for that, that accounted for tolling based on the mental incapacity. That's not the situation here. First of all, it's not children, right? But second of all, doesn't your argument... You could look at it both ways. I hear what you're saying. But another way to look at it is that Congress's silence meant that they thought that equitable tolling for mental disabilities should apply and that the regular common law that applies in other areas would apply here, that that's what their silence suggests. Whereas you would say their silence suggests no tolling at all. I would say that argument or that position, if that's the direction this court wants to go, is not consistent with what this court said in Clure, in which the court said Congress's failure to implement a discovery rule and the statute of limitations conveyed its refusal to adopt a discovery rule. And so following the same logic, Congress's refusal to toll the statute of limitations based on mental incapacity conveyed its refusal to toll the limitations period in cases involving neurological injuries or anything that prevents their position from... One could argue in Clure that it's different because in Clure, the statute says specifically, right, that it's from the time that the symptoms first appear. So it's not just silence. Well, but there is still the... I mean, it doesn't then go on to say, and not from the time the petitioner discovers there is a potential claim. And so I think the same argument would be applicable here. The whole point of equitable tolling is that the statute doesn't provide for it, and that absent a statement in the statute that there shouldn't be equitable tolling, the Supreme Court has told us that there is equitable tolling. And in fact, Clure said there's equitable tolling in the Vaccine Act. The only question is whether a particular kind of equitable tolling for lack of capacity should apply here. Why should... If we have equitable tolling in the Vaccine Act, why shouldn't there be equitable tolling for lack of capacity? Well, and I again go back to Clure, because while Clure did say equitable tolling is available, Clure went on to say equitable tolling is not available as a substitute for the discovery rule. And so just as here, petitioners attempting to use equitable tolling based on mental incapacity as a substitute for the fact that Congress did not already provide for tolling within the statute of limitations in cases where there is mental incapacity. So unless the Court has any further questions, I believe I've covered everything that I was hoping to cover today. We believe the Special Master was reasonable in his fact-finding and correctly applied the law, and we therefore ask the Court to affirm his decision. Okay. Thank you, Mr. Johnson. Mr. Hermsen. Thank you, Your Honor. I can address the waiver issue if you want. I'd rather use my time on other issues. So unless you have questions on that, I'm going to skip the waiver issue. The diligence argument, Special Master and Hodge, I think it was on remand, addressed that diligence argument. And he said we're not applying diligence in the mental incapacity context because doing so would be like trying to fit a square peg in a round hole. Because what we're saying is that this person is not mentally capable of diligence. So that's not the test. The test is did this, was it of sufficient severity, and then did it impair that relationship? Clore is actually the case that held that equitable tolling applies in the Vaccine Act. So the continued citations to Clore confuse me. That addressed the discovery rule. The discovery rule is completely different than the equitable tolling doctrine. It has different common law roots. Justice Scalia in McQuiggan v. Perkins was the case. And Justice Scalia, of course, is not one to read many exceptions into a statute if there's not textual support. Justice Scalia said the equitable tolling doctrine has a strong basis in common law. It was adopted by the colonies. It is assumed that those colonial legislators would have brought that strong doctrine over from England with them, and they would have assumed that all their statute limitations that that doctrine would have applied. So that's not the case with the discovery rule. So we're dealing with two very different rules with very different common law legal bases. As far as whether the language in the statute, I think the language is that a legal representative, quote, may bring a claim on a petitioner's behalf. My understanding is that that is what respondents hang their hat on as far as this statute being inconsistent and with equitable tolling. That's simply not the case. I addressed that in my brief. Saying that someone may bring a claim is not the same as saying that they have to. And there's really strong Supreme Court case law in recent years saying you need more than that. U.S. v. Kwai Fun Wong was the case, a 2015 case. And they really clarified that since the Irwin presumption, not only does that presumption continue to apply, but it's stronger than ever. We need an affirmative indication from Congress. It can't just be that this is a run-of-the-mill statute of limitations. It can't be that the statute of limitations has exceptions to it. It can't even be that the statute of limitations is worded very strongly. It has to be some kind of affirmative indication from Congress saying we don't want equitable tolling to apply in this case. There's no such indication from Congress here. There's nothing in the statute inconsistent with applying equitable tolling for a mentally incapacitated petitioner. Thank you. Thank you, both counsel. The case is submitted.